**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DANIEL PONCE, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

          Plaintiff,

      v.

SPRING NATURAL CORP.
      d/b/a THYME & TONIC
      f/d/b/a SPRING NATURAL KITCHEN,
TASTEBUD MARKET LLC
      d/b/a MODERN BREAD AND BAGEL,
ORLY GOTTESMAN, and
JOSH BORENSTEIN,

          Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

---

     Plaintiff, DANIEL PONCE (hereinafter, "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants SPRING NATURAL CORP. d/b/a THYME & TONIC f/d/b/a SPRING NATURAL KITCHEN, TASTEBUD MARKET LLC d/b/a MODERN BREAD AND BAGEL ("Corporate Defendants"), ORLY GOTTESMAN, and JOSH BORENSTEIN

("Individual Defendants") (each individually, "Defendant" or, collectively, "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff DANIEL PONCE alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to timeshaving; (2) unpaid overtime wages, due to invalid tip credit deductions; (3) unpaid wages due to invalid meal credit deductions; (4) liquidated damages; and (5) attorney's fees and costs.

2.      Plaintiff DANIEL PONCE further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to timeshaving; (2) unpaid minimum wages due to invalid tip credit deductions; (3) unpaid wages due to invalid meal credit deductions; (4) unpaid spread of hours premiums; (5) statutory penalties; (6) liquidated damages; and (7) attorney's fees and costs.

3.      Plaintiff additionally brings individual claims, pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), due to Defendants' hostile treatment towards him, and is entitled to recover from Defendants: (1) economic damages (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

4.      Plaintiff brings additional individual claims, pursuant to the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"), due to Defendants' hostile treatment towards him, and is entitled to recover from Defendants: (1) economic damages (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

5.      Plaintiff brings additional individual claims, pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, due to Defendants' unlawful retaliation against

him for asserting his rights under the foregoing statutes and is entitled to recover from Defendants: (1) economic damages (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

6.      Plaintiff brings additional individual claims, pursuant to the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, due to Defendants' unlawful retaliation against him for asserting his rights under the foregoing statutes, and is entitled to recover from Defendants: (1) economic damages (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

8.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

9.      Plaintiff DANIEL PONCE is a resident of Queens County, New York.

10.     Defendants collectively own and operate the restaurants Thyme & Tonic and Modern Bread and Bagel at the following locations:

    i.     Thyme & Tonic, located at 474 Columbus Avenue, New York, NY 10024 ("Thyme & Tonic");

    ii.     Modern Bread and Bagel, located at 472 Columbus Avenue, New York, NY 10024 ("Modern Bread and Bagel");

11.     Modern Bread and Bagel, located at 139 West 14th Street, New York, NY 10011 ("Modern Bread and Bagel Chelsea");

(collectively, the "Restaurants").

Additionally, Corporate Defendant SPRING NATURAL CORP. formerly did business as Spring Natural Kitchen, located at 474 Columbus Avenue, New York, NY 10024, where it currently does business as Defendants' Thyme & Tonic at the same location.

12.     Corporate Defendant SPRING NATURAL CORP. d/b/a THYME & TONIC f/d/b/a SPRING NATURAL KITCHEN is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and address for service of process located at 474 Columbus Avenue, New York, NY 10024. Defendants currently own and operate Thyme & Tonic at 474 Columbus Avenue, New York, NY 10024 through Corporate Defendant SPRING NATURAL CORP.

13.     Corporate Defendant TASTEBUD MARKET LLC d/b/a MODERN BREAD AND BAKERY is a domestic limited liability company organized under the laws of the State of New York,  with a principal place of business located at 472 Columbus Avenue, New York, NY 10024, and an address of service of process located at 90 State Street, Suite 700, Office 40, Albany, NY 12207.

14.     Individual Defendant ORLY GOTTESMAN is the founder and owner of Corporate Defendants. *See* **Exhibit A**. ORLY GOTTESMAN exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. ORLY GOTTESMAN frequently visits the restaurant locations, exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the restaurants may complain to ORLY GOTTESMAN directly regarding any of the

terms of their employment, and ORLY GOTTESMAN would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. ORLY GOTTESMAN exercised functional control over the business and financial operations of the Corporate Defendant. ORLY GOTTESMAN had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

15.     Individual Defendant JOSH BORENSTEIN is the founder and owner of Corporate Defendants. *See* **Exhibit A**. JOSH BORENSTEIN exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. JOSH BORENSTEIN frequently visits the restaurant locations, exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the restaurants may complain to JOSH BORENSTEIN directly regarding any of the terms of their employment, and JOSH BORENSTEIN would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. JOSH BORENSTEIN exercised functional control over the business and financial operations of the Corporate Defendant. JOSH BORENSTEIN had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

16.     The Restaurants are owned, managed, and operated by Individual Defendants ORLY GOTTESMAN and JOSH BORENSTEIN. Defendants engaged in identical activities, shared common ownership and have a common business purpose:

a) Defendants admit and advertise that the Restaurants share ownership on their website. *See* **Exhibit B**, Defendants' website;

b) The Restaurants share common ownership of Individual Defendants. *See* **Exhibit A; Exhibit B**;

c) The Restaurants specialize in gluten-free kosher food, and are marketed as such. *See* **Exhibit A**; **Exhibit C**, News Articles;

d) Defendants provide the same terms of employment to all employees;

e) Employees are interchangeable. Although Plaintiff was primarily employed for Defendants' Restaurant THYME & TONIC, he was regularly interchanged and required to work at Defendants' MODERN BREAD AND BAGEL on as needed basis.

17. Each Defendant engages in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the employees of each Defendant handles goods and materials produced outside of New York (including vehicles, tools, cleaning supplies, and other items) that have moved in interstate commerce, and the Defendants are thus employers subject to the jurisdiction of the FLSA.

18. At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of FLSA.

19. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

## BACKGROUND

20.     Corporate Defendant SPRING NATURAL CORP owned and operated the Restaurant Spring Natural Kitchen at 474 Columbus Avenue, New York, NY 10024 from or about July 2011 to or about February 2020. Spring Natural Kitchen then closed down and was purchased by Individual Defendants, and replaced by Defendants' Thyme & Tonic. Although both Restaurants are run by different owners, Thyme & Tonic is registered to operate business under the same corporate entity, Corporate Defendant SPRING NATURAL CORP. Additionally, Thyme & Tonic retained all its predecessor's employees and employment practices. Plaintiff's employment began at Defendants' Spring Natural Kitchen, and continued at Defendants' Thyme & Tonic until his termination.

21.     Despite this change in ownership, Corporate Defendant SPRING NATURAL CORP. has continued to operate Thyme & Tonic similarly to its predecessor business, using the same wage and hour employment policies.

22.     Therefore, Corporate Defendant SPRING NATURAL CORP. is liable for Plaintiff's and Class Members' damages due to the violations of the FLSA and the NYLL alleged herein which occurred at Spring Natural Kitchen between the date that is six (6) years before the filing of this Complaint through to the present.

## FLSA COLLECTIVE ACTION ALLEGATIONS

23.     Plaintiff DANIEL PONCE asserts claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including but not limited to bussers, servers, waiters, bartenders, deli workers, and food runners) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (hereinafter, "FLSA Collective Plaintiffs").

24.    At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages for all hours worked due to timeshaving and invalid tip credit and meal credit deductions. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

25.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

26.    Plaintiff asserts claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including but not limited to bussers, servers, waiters, bartenders, deli workers, and food runners) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

27.    The Class Members are readily ascertainable. The number and identity of the Class Members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also able to be determined from Defendants' records. For purposes of notice and other purposes related to this action, their

names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

28.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants and there is no doubt that there are more than forty (40) members of the Class.

29.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All Class Members were subject to the same corporate practices of Defendants of (i) failure to pay proper wages due to invalid tip credit deductions; (ii) failure to pay wages due to invalid  meal credit deductions; (iii) failure to pay wages due to timeshaving; (iv) failure to provide proper wage statements per requirements of NYLL; and (v) failure to properly provide wage notices to Class Members, at the date of hiring and annually, per requirements of NYLL.

30.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff, and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

31.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

32. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

33. Defendants and other employers throughout the State violate New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members

who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

34.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.    Whether Defendants employed Plaintiff and the Class within the meaning of New York law and applicable state laws;

b.    What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c.    At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class members for their work;

d.    Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

e.    Whether Defendants properly provided notice to Plaintiff and Class Members that Defendants were taking a tip credit;

f.    Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% or 2 hours of their workweek;

g.    Whether Defendants claimed tip credits for any continuous periods of time of non-tipped, directly supporting work exceeding 30 minutes;

h.    Whether the meals Defendants provided to Plaintiff and Class Members properly satisfied New York State's nutritional requirements containing all four (4) food groups for meals provided to employees;

i.   Whether the meals Defendants provided to Plaintiff and Class Members exceeded the meals "reasonable cost";

j.   Whether Plaintiff and Class Members actually consumed the credited meals provided by Defendants;

k.   Whether Plaintiff and Class Members consumed the credited meals provided by Defendants during reasonable meal periods;

l.   Whether Defendants took the proper amount of tip credit allowance for each payment period under the NYLL;

m.   Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members the prevailing minimum wage as required by the NYLL;

n.   Whether Defendants operated their business with a policy of not compensating employees for all hours worked due to timeshaving;

o.   Whether Defendants provided proper wage statements informing employees of information required to be provided on wage statements as required under NYLL and applicable state laws; and

p.   Whether Defendants provided proper wage and hour notice to employees, including, among others, the rate of compensation, trade name of employer, pursuant to the requirements of NYLL and applicable state laws.

## **STATEMENT OF FACTS**

*Plaintiff's, FLSA Collective Plaintiffs' and Class Members' Wage and Hour Claims:*

35.   In or around June 2010, Plaintiff DANIEL PONCE was hired by Defendants to work as a Busboy for Defendants' SPRING NATURAL KITCHEN restaurant located at 474

Columbus Avenue, New York, NY 10024. In or around 2019, SPRING NATURAL KITCHEN was replaced by THYME & TONIC, and Plaintiff's employment continued through the succession. From in or about March 2020, to in or about December 2021, Plaintiff was not employed with Defendants due to the COVID-19 lockdowns and resulting lay-offs. Plaintiff resumed working for Defendants in or about December 2021. Plaintiff was employed by Defendants until in or around July 2023.

36.    Additionally, approximately three (3) days each week, Plaintiff was required to work at Defendants' restaurant MODERN BREAD AND BAGEL located at 472 Columbus Ave, New York, NY 10024, based on Defendants' needs. FLSA Collective Plaintiffs and Class Members were similarly regularly transferred between Defendants' businesses.

37.    Throughout his employment, Plaintiff worked four (4) days per week on (i) Mondays, Tuesdays, and Fridays from 11:00 a.m. to 4:30 p.m., and (ii) Saturdays from 9:00 a.m. to 4:30 p.m, for total of twenty-four (24) hours per week.

38.    Throughout Plaintiff's employment, Defendants subjected Plaintiff to a policy of timeshaving. In addition to Plaintiff's above scheduled hours, Defendants regularly required Plaintiff to stay late and work off-the-clock past his scheduled shifts, approximately three times per week. As a result, Plaintiff actually worked approximately thirty-five (35) hours per week. FLSA Collective Plaintiffs and Class Members worked similar hours and were similarly regularly required to work off-the-clock past their scheduled shifts.

39.    As a result of Defendants requiring Plaintiff to perform off-the-clock work every week, Defendants failed to pay Plaintiff for approximately eleven (11) hours per week. Defendants failed to pay FLSA Collective Plaintiffs and Class Members for similar amounts of off-the-clock

work every week. For some FLSA Collective Plaintiffs and Class Members, Defendants' timeshaving policies resulted in unpaid overtime wages.

40.    Throughout Plaintiff's employment, Defendants compensated Plaintiff, FLSA Collective Plaintiffs, and Class Members at the tip credit minimum wage. At all times, Plaintiff, FLSA Collective Plaintiffs, and Class Members were paid below the prevailing minimum wage that Plaintiff and Class Members were entitled to.   With respect to Plaintiff, FLSA Collective Plaintiffs, and Class Members, Defendants were not entitled to claim any tip credit allowances under the FLSA or the NYLL because Defendants: (i) failed to properly provide tip credit notice at hiring and with every change in rate of pay thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) claimed tip credit for all continuous periods of time of non-tipped, directly supporting work exceeding 30 minutes, (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (v) failed to accurately keep track of daily tips earned and maintain records thereof.

41.    Every day, Plaintiff, FLSA Collective Plaintiffs, and Class Members were required by Defendants to engage in non-tipped work including, but not limited to sweeping and mopping the restaurant, sweeping the sidewalk, cleaning the bathroom, hosting, and cleaning and setting up the dining area and tables. Thus, Plaintiff's, FLSA Collective Plaintiffs', and Class Members' total non-tipped work amounted to over twenty percent (20%) of their total hours worked per week. Defendants were not entitled to claim any tip credits for these hours.

42.    Additionally, Defendants claimed tip credit for all continuous periods of time of Plaintiff's, FLSA Collective Plaintiffs', and Class Members' non-tipped, directly supporting work

exceeding 30 minutes. Defendants improperly claimed tip credit for the supporting non-tipped work by the employees continuously exceeding thirty (30) minutes.

43.     Throughout Plaintiff's employment, Defendants improperly deducted a meal credit from Plaintiff's, FLSA Collective Plaintiffs', and Class Members' wages under FLSA § 203(m) and NYCRR § 146-1.9, without regard to (i) whether the meal credit deducted exceeds the meals' "reasonable cost", (ii) whether the meals provided by Defendants satisfied the New York State's nutritional requirements containing all four (4) food groups, (iii) whether employees actually consumed the credited meals, and (iv) whether employees consumed the credited meals during reasonable meal periods. Plaintiff, FLSA Collective Plaintiffs, and Class Members were not permitted to take breaks to consume the meals offered by Defendants. Even on occasions when they were able to take the time to eat, they were required by Defendants to order their meals from Defendants' menu, for a cost, despite the fact that Defendants were automatically deducting meal credits from their paychecks.

44.     Defendants never provided Plaintiff with proper wage statements in violation of the NYLL as it failed to accurately list Plaintiff's total worked time and wages. Similarly, Class Members were not provided with proper wage statements as required by the NYLL.

45.     At no time during the relevant periods did Defendants provide Plaintiff or Class Members with proper wages notices, at the beginning of employment and with every change of payrate thereafter as required by the NYLL.

46.     At no time during the relevant periods did Defendants provide Plaintiff or Class Members with tip notices informing Plaintiffs and Class Members that Defendants were deducting tip credits from their wages, in violation of the NYLL.

47.     Defendants knowingly and willfully operated their business with a policy of compensating Plaintiff and Class Members with wages below the prevailing minimum wage, in violation of the NYLL.

48.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by NYLL.

*Plaintiff's Individual Discrimination and Retaliation Claims:*

49.     Throughout his employment, Plaintiff suffered from Defendants' discrimination and retaliation, and was subjected to a hostile work environment maintained by Defendants.

50.     In or around June 2023, Defendants hired a new chef ("Chef") for their Restaurant. From the beginning of his employment, Chef was unwarrantedly hostile, argumentative and confrontational towards Plaintiff. Throughout Chef's first month of employment, Chef started numerous arguments with Plaintiff with the sole intent to harass Plaintiff, and for no other actual reasons.

51.     As a result of these arguments, Defendants changed Plaintiff's schedule, without consulting Plaintiff, to separate Plaintiff from Chef. Defendants scheduled Plaintiff to work the hours Chef did not. Because Chef worked so many hours, there were very limited hours which Defendants could schedule Plaintiff. Plaintiff's hours after this change were therefore much lower. Defendants took no disciplinary action upon Chef for inciting arguments with Plaintiff.

52.     At this point in time, Plaintiff had worked for Defendants for thirteen (13) years, and worked the same schedule for the complete duration of his employment, whereas Chef had only worked for Defendants for approximately one (1) month. Additionally, Plaintiff was not paid for all hours worked and had invalid tip and meal credits deducted from his wages for all these years, Despite this,  Defendants favored Chef, who needlessly instigated every argument with

Plaintiff, and discriminatorily and retaliatorily changed Plaintiff's schedule that was set for thirteen (13) years.

53.    In or around July 2023, Plaintiff objected to Defendants' above discriminatory and retaliatory schedule change, and Defendants' constructively terminated Plaintiff's employment in response.

54.    Defendants discriminated against Plaintiff by favoring the newly hired Chef and reducing Plaintiff's hours with no action being taken upon Chef, despite Plaintiff's innocence in any arguments between Plaintiff and Chef. Defendants then further retaliated against Plaintiff by terminating his employment because he raised objections to Defendants' discriminatory schedule change.

55.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

56.    Plaintiff realleges the foregoing paragraphs of this Class and Collective Action Complaint as fully set forth herein.

57.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

58.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of FLSA.

59.    At all relevant times, each Corporate Defendant had a gross annual revenue in excess of $500,000.

60.    At all relevant times, Defendants had a policy and practice that failed to pay proper wages to Plaintiff and FLSA Collective Plaintiffs for all hours of work required by Defendants.

61.    At all relevant times, Defendants had a policy and practice that failed to pay wages at the statutory rate of time to Plaintiff and FLSA Collective Plaintiffs for all hours worked due to invalid tip credit deductions.

62.    At all relevant times, Defendants had a policy and practice of improperly deducting meal credits from Plaintiff's and FLSA Collective Plaintiffs' wages, regardless of whether the meal credits deducted by Defendants exceeded "reasonable cost", whether the meals provided by Defendants satisfied New York State's nutritional requirements containing all four (4) food groups, and whether Plaintiff and FLSA Collective Plaintiffs consumed the meals in question.

63.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

64.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, when Defendants knew or should have known such was due.

65.    Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidence by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages due to Defendants' timeshaving and invalid tip credit and meal credit deductions.

66.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under FLSA.

67.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

68.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of (i) unpaid wages due to timeshaving, (ii) unpaid wages due to invalid tip credit deductions, and (iii) unpaid wages due to invalid meal credit deductions.

69.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

70.     Plaintiff realleges the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

71.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

72.     Defendants engaged in a policy and practice of refusing to pay Plaintiff and Class Members the New York City minimum wage due to invalid tip credit deductions.

73.     Defendants failed to properly notify Plaintiff and Class Members of their wage rates, in direct violation of NYLL.

74.     Defendants failed to properly compensate Plaintiff and Class Members their corresponding wages, due to a policy of timeshaving, in direct violation of NYLL.

75.    Defendants willfully violated Plaintiff's and Class Members' rights by improperly deducting meal credits from Plaintiff's and Class Members' wages, regardless of whether Defendants' meal credit deductions exceeded the "reasonable cost", whether the meals provided by Defendants satisfied New York State's nutritional requirements containing all four (4) food groups, whether Plaintiff and Class Members consumed the meals provided by Defendants, and whether Plaintiff and Class Members consumed the meals provided by Defendants during reasonable meal periods.

76.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members proper wage notices, at date of hiring and annually thereafter, as required under NYLL.

77.    Defendants knowingly and willfully operated their business with a policy of not providing proper tip notices to Plaintiff and Class Members at time of hiring.

78.    Defendants knowingly and willfully operated their business with a policy of not providing proper and accurate wage statements to Plaintiff and Class Members, as required under NYLL.

79.    Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants (i) unpaid minimum wages due to invalid tip credit deductions, (ii) unpaid wages due to invalid meal credit deductions, (iii) unpaid wages for off-the-clock work, (iv) reasonable attorney's fees, (v) liquidated damages, (vi) statutory penalties, and (vii) costs and disbursements of the action, pursuant to NYLL.

## COUNT III

### DISCRIMINATION UNDER THE
### NEW YORK STATE HUMAN RIGHTS LAW

**(N.Y. Exec. Law § 292, *et seq*.)**

80.    Plaintiff realleges the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

81.    The New York State Executive Law § 296(1)(a) provides that:

"[I]t shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

82.    Defendants violated the New York State Human Rights Law when they discriminated against Plaintiff by unfairly reducing his hours.

83.    This discriminatory conduct was in willful disregard of the provisions of the NYSHRL.

84.    As a direct and proximate result of Defendants' willful disregard of the NYSHRL, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## COUNT IV

### DISCRIMINATION UNDER THE
### NEW YORK CITY HUMAN RIGHTS LAW

**(New York City Administrative Code §8-101, *et seq*.)**

85.    Plaintiff realleges the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

86.    The New York City Administrative Code §8-107(1) provides that:

"[I]t shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

87.    Defendants violated Plaintiff's rights under the New York City Human Rights Law when they discriminated against Plaintiff by unfairly reducing his hours.

88.    This discriminatory conduct was in willful disregard of the provisions of the NYCHRL.

89.    As a direct and proximate result of Defendants' willful disregard of the NYCHRL, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

### COUNT V

### RETALIATION UNDER THE
### NEW YORK STATE HUMAN RIGHTS LAW

**(N.Y. Exec. Law § 292, *et seq*.)**

90.    Plaintiff realleges the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

91.    New York State Executive Law § 296(7) provides that:

"[I]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate. . . against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

92.    Defendants violated Plaintiff's rights under the New York State Human Rights Law when they retaliated against Plaintiff and constructively terminated his employment after Plaintiff complained to Defendants about their discriminatory reduction in Plaintiff's hours.

93.    This retaliatory conduct was in willful disregard of the provisions of the NYSHRL.

94.     As a direct and proximate result of Defendants' willful disregard of the NYSHRL, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

**COUNT VI**

**RETALIATION UNDER THE
NEW YORK CITY HUMAN RIGHTS LAW**

**(N.Y.C. Admin. Code § 8-101, *et seq.*)**

95.     Plaintiff realleges the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

96.     The New York City Administrative Code §8-107(1) provides that:

"[I]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter,. . . (v) requested a reasonable accommodation under this chapter"

97.     Defendants violated the New York City Human Rights Law ("NYCHRL") when they retaliated against Plaintiff and constructively terminated his employment after Plaintiff complained to Defendants about their discriminatory reduction in Plaintiff's hours.

98.     This retaliatory conduct was in willful disregard of the provisions of the NYCHRL.

99.     As a direct and proximate result of Defendants' willful disregard of the NYCHRL, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, the NYSHRL, and the NYCHRL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages due to invalid tip credit deductions, due under the FLSA and the NYLL;

d.  An award of unpaid wages due to invalid meal credit deductions, due under the FLSA and the NYLL;

e.  An award of unpaid wages due to off-the-clock work, due under the FLSA and the NYLL;

f.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wages for all hours worked due to invalid tip credit and unpaid off-the-clock work pursuant to the FLSA and the NYLL;

g.  An award of all applicable damages due to Defendants' discriminatory conduct under the NYSHRL and the NYCHRL;

h.  An award of all applicable damages due to Defendants' retaliatory conduct under the NYSHRL and the NYCHRL;

i.   An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorney's and expert fees and statutory penalties;

j.   Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

k.   Designation of this action as a class action pursuant to F.R.C.P. 23;

l.   Designation of Plaintiff as Representative of the Class; and

m.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Date:  December 7, 2023                                    Respectfully submitted,
       New York, New York

                                        By:   /s/ *C.K. Lee*
                                              C.K. Lee, Esq. (CL 4086)

                                              **LEE LITIGATION GROUP, PLLC**
                                              148 W. 24th Street, 8th Floor
                                              New York, NY 10011
                                              Tel.: 212-465-1180
                                              Fax: 212-465-1181
                                              *Attorneys for Plaintiff,*
                                              *FLSA Collective Plaintiffs,*
                                              *and the Class*